**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

_____

SUSAN HANSEN, FOR HERSELF AND ON
BEHALF OF ALL OTHERS SIMILARLY SITUATED
    PLAINTIFF,

V.

MONUMENTAL LIFE INSURANCE COMPANY,
    DEFENDANT
_____

)
)
)
)
)
)
)
)
)
)
)

CASE NO:

COMPLAINT

JURY TRIAL
DEMANDED

DECEMBER 13, 2005

## I.   INTRODUCTION

1.   This consumer class action arises out of the Defendant credit insurer's highly profitable but unlawful practice of failing to refund unearned premiums to its insureds who pay off their motor vehicle loans before the prepaid credit insurance coverage term has expired.

2.   Defendant Monumental Life Insurance Company ("Monumental") sold "single premium" credit life and disability insurance through motor vehicle dealerships.

3.   The dealerships, acting as Monumental's producers, included its premium charges in many of their customer's motor vehicle contracts.  Customers charged for this "single premium" credit insurance product actually paid in advance for several years of insurance coverage.

4.   Monumental's insurance contract provides that if the loan is paid off early, then the insurance automatically terminates and the unearned premiums will be promptly refunded.

5.   Plaintiff and class members paid off their loans early, but Monumental did *not* refund

their unearned premiums– it kept them instead.

6.    Monumental thereby breached its contractual duties to the Plaintiff and class members.

7.    Plaintiff seeks for herself, and for a nationwide class and a Connecticut subclass, actual and statutory damages, attorneys' fees, punitive damages and declaratory and injunctive relief.

## II.    JURISDICTION

8.    Jurisdiction in this court is proper pursuant to Section 4 of the Class Action Fairness Act, S.5 (2005), and 28 U.S.C. §1331 and § 1332.

9.    This court has jurisdiction over the defendant because it regularly conducts business in this state.

10.    Venue in this court is proper, as the plaintiff is a resident of Connecticut and the action concerns real property located in this state.

## PARTIES

11.    Plaintiff, Susan Hansen, is over the age of 18 and resides in Portland, Connecticut. Plaintiff brings this action on behalf of herself and a class of others similarly situated.

12.    Defendant, Monumental Life Insurance Company ("Monumental"), is organized under the laws of the state of Maryland and maintains a principal place of business at Two East State Street, Baltimore, MD 21202.  Monumental is a subsidiary of Aegon NV (NYSE:AEG). Monumental is engaged in the business, among other things, of underwriting single premium credit life insurance and single premium credit disability insurance coverages, which it markets through agents including motor vehicle dealerships throughout Connecticut and the rest of the country.

## THE "SINGLE PREMIUM" CREDIT INSURANCE PRODUCT IN ISSUE

13.    Monumental's credit life insurance was designed to pay off the loan if the insured dies

before the loan is otherwise been paid off; its credit disability insurance was designed to make periodic payments if the insured becomes disabled before the loan is paid off.  The provisions dealing with credit life and credit disability appeared in the same contract, and the insurance termination and refund provisions in the contract worked the same regardless of whether the consumer purchased credit life insurance, credit disability insurance, or both.

14.    Monumental's "single premium" credit insurance was structured such that the entire multi-year coverage term must be paid in advance, out of the loan proceeds.  The large premium that Monumental collected up-front is earned by Monumental over time, and is only <u>fully</u> earned by Monumental if the insured keeps the loan out until the loan maturity date.

15.    In other words, the up-front premium always belongs to the insured, but Monumental "earns" it over time.  If the insured does not pay off the loan early, then Monumental eventually "earns" the full premium it collected up-front.  However, if the insured pays off the loan early, before its scheduled maturity date, then a portion of the prepaid premium will never be "earned," and, instead, Monumental must refund this "unearned" premium to its rightful owner.

16.    Monumental's insurance contract provides that if the insured loan is prepaid the insurance automatically terminates and the unearned premium shall be promptly refunded.

17.    The refund provision is unsurprising, because if an insured loan is paid off early, then the consumer paid for insurance coverage that Monumental never provided.  In this situation, Monumental is holding "unearned premiums" – money that rightfully belongs to the consumer.

18.    For general background on the single premium credit insurance product and the unearned premiums problem that has given rise to this and numerous other cases, lawsuit, <u>see</u> O'Brien, E. and Roddy, J., <u>Credit Insurance Premium Refunds: A Multi-million Dollar</u>

<u>Constructive Trust</u>, Consumer Financial Services Litigation (Practicing Law Institute, April, 2000) (<u>Exhibit A</u>).

### PLAINTIFF'S TRANSACTION

19.    On August 23, 2002, Plaintiff Susan Hansen entered into a retail installment contract with a Connecticut motor vehicle dealership for the purchase of a motor vehicle.  <u>Exhibit B</u> is a copy of this contract.

20.    The dealership, acting as Monumental's producer, added a charge of $145 to the contract for 36 months of Monumental's "single premium" credit life coverage and a charge of $296 for 36 months of its "single premium" credit disability coverage.  <u>See</u>, Exhibit B, <u>supra</u>.

21.    Monumental issued Plaintiff a certificate of insurance in exchange for the premium. <u>Exhibit C</u> is a copy of this certificate of insurance.

22.    The certificate provided that if she prepaid the loan then the insurance coverage automatically terminated and her unearned premium would be promptly refunded. <u>See</u>, Exhibit C, <u>supra</u>.

23.    On or before March 5, 2004, prior to the expiration of the credit insurance coverage term and the loan term, Plaintiff fully prepaid the insured indebtedness.

24.    Monumental did not process an unearned premium for Plaintiff.

25.    Plaintiff had not received her unearned premium refund as of the date this lawsuit was commenced.

26.    By commencement of this consumer class action and service of her Complaint, Plaintiff provides Monumental with notice that she and other consumers have paid off their credit-insured motor vehicle loans early and are entitled to refunds of the unearned premiums attributable to their prepaid Monumental credit insurance coverage.

### FACTS COMMON TO PLAINTIFF'S AND CLASS MEMBERS' TRANSACTIONS

27.    When Plaintiff and class members bought automobiles, motorcycles, and all-terrain vehicles (*i.e.*, motor vehicles), the dealerships that arranged financing for them also charged them for "single premium" credit insurance underwritten by Monumental.

28.    The premium for the entire insurance coverage term was added to the initial indebtedness and disbursed in full out of the loan proceeds.

29.    In exchange for the prepaid premiums, Monumental issued the Plaintiff and class members a standard form certificate of insurance.

30.    The standard form insurance contract provided, among other things, that if the insured loan was paid off early (i.e., prior to the maturity date), then the insurance automatically terminated and the unearned premium would be promptly refunded.

31.    Monumental failed to implement any mechanism designed to reasonably assure that it would learn of it when loans were prepaid and therefore be in a position to comply with its contractual promise to promptly refund unearned premiums when its insurance automatically terminated due to early loan payoffs.

32.    Plaintiff and class members paid off their loans early.

33.    When Plaintiff and class members paid their loans early:

a.    Their Monumental insurance coverage automatically terminated; but

      b.    Monumental did not refund their unearned premiums to them.

34.    Monumental still possesses their unearned premiums.

## CLASS ALLEGATIONS

35.    Plaintiff brings this action as a class action, on behalf of herself and a class comprised

of all persons who share characteristics as follows:

> All persons charged for Monumental single premium credit insurance produced by a motor vehicle dealership, who paid off their credit-insured loans during the applicable limitations period and prior to the insurance coverage expiration date, who did not receive a refund of their unearned premium prior to the commencement of this lawsuit.[1]

36.    A Connecticut subclass exists, which she defines as:

> All persons charged for Monumental single premium credit insurance produced by a motor vehicle dealership <u>within Connecticut</u>, who paid off their credit-insured loans during the applicable limitations period and prior to the insurance coverage expiration date, who did not receive a refund of their unearned premium prior to the commencement of this lawsuit.[2]

37.    The representative Plaintiff is a member of the class and subclass she seeks to represent.

38.    The precise identity of the class members is readily ascertainable through ministerial

file examination based on objective criteria and can be ascertained using information possessed

by Monumental, along with computer records and clerical assistance – thus rendering

unnecessary an evidentiary hearing on each claim.

---

[1] Excluded from the class are all (1) insureds who timely and properly request exclusion from the class; (2) insureds who are present or former officers and directors of Monumental; (3) insureds whose credit insurance was rescinded by mutual consent of the parties or whose coverage was canceled by either the insured or the insurer prior to the prepayment date; (4) insureds who prepaid the indebtedness outside the applicable limitations period; (5) insureds whose indebtedness was discharged in bankruptcy and not reaffirmed; (6) insureds whose coverage was terminated because the collateral was repossessed; (7) insureds who have signed contracts with Monumental that contain a provision requiring arbitration of claims for unearned premium; and (8) insureds as to whom Monumental has paid a death claim.

[2] See exclusions as in preceding footnote.

39.    The time period for the class is the number of years immediately preceding the date on which this Complaint was filed as allowed by each state's statute of limitations, going forward into the future until such time as Monumental takes remedial action to reasonably ensure that its insureds who pay off their loans early receive the refunds to which they are legally and contractually entitled.

40.    Class requirements are met in that:

a.    <u>Numerosity</u>.  Counsel has conducted an extensive pre-filing investigation into Monumental's single premium credit insurance activities in Connecticut and across the country. Consumers in Connecticut alone have paid over $7 million *in advance* for Monumental single premium credit life and credit accident and health insurance coverage over the past several years. A large portion of the premiums identified above relate to single premium credit life and credit disability coverage written through motor vehicle dealers.  Class counsel contends much of the coverage ostensibly provided in exchange for these premiums is in fact illusory, as it purports to cover indebtedness that had. In fact, been paid off already and that therefore is nonexistent. Thus, a substantial portion of these premiums were never "earned" by Monumental and instead constitute "unearned premiums" which Monumental was required to, but did not, refund to its former insureds when they prepaid their loans.  If, as class counsel believes, based upon knowledge obtained in similar cases, the average consumer was charged a single premium of about $500 for Monumental credit life and Monumental credit accident and health coverage, then it is likely Monumental has issued over 10,000 credit insurance certificates pertaining to car loans since 1995 in Connecticut alone.  And if, as counsel believes based on knowledge obtained in similar cases, at least 50% of the credit-insured car loans were paid off early and no refund was made, as many as 5,000 class members may exist.  Counsel believes Monumental has

wrongfully retained $1-2 million or more in unearned premiums belonging to the Connecticut subclass members, and that the average subclass member is owed more than $200 in unearned premiums. Moreover, class counsel believes, based upon knowledge obtained in similar cases, that a nationwide class would consist of well over 50,000 consumers who prepaid their loans but never received their unearned premium refunds from Monumental.

b.   <u>Commonality</u>. Questions of law and fact of common and general interest to the class exist as to all class members and predominate over any questions affecting only individual members of the class.

i.   Common <u>factual</u> issues include:

(1)   Whether Monumental, through its motor vehicle dealership producers, charged Plaintiff and the class members for single premium credit insurance;

(2)   Whether Plaintiff and class members paid off their credit-insured loans prior to the loan maturity date and the insurance coverage expiration date;

(3)   Whether Monumental paid unearned premium refunds to Plaintiff and class members prior to the commencement of this lawsuit;

(4)   Whether Monumental's usual business pattern and practice upon early loan payoff is to retain unearned premiums for itself unless and until it is provided with notice of the early loan payoff;

(5)   Whether Monumental knows or should know that it has retained and continues to retain millions of dollars in unearned premiums belonging to consumers who prepaid their loans.

ii.   Common <u>legal</u> issues include:

(1)     Whether Monumental has a contractual duty to refund unearned premiums when an insured loan is paid off before its scheduled maturity date;

(2)     Whether actual or constructive notice of the early loan payoff is a condition precedent to Monumental's obligation to refund unearned premiums; and, if so

(a)     Whether the filing of this consumer class action lawsuit against Monumental put Monumental on notice of claims for unearned premiums on behalf of the absent class members in this case;

(b)     Whether Monumental must be put on notice within any particular time period; and, if so, whether Plaintiff and the class members have unwittingly forfeited their monies if Monumental has not been put on notice within that time period.

(c)     Whether lender records submitted to a credit reporting agency:

i.     Serve as actual or constructive notice to Monumental of a claim for unearned premiums on behalf of the absent class members; and, if so;

ii.     Whether they are admissible under the business records exception to the hearsay rule to prove payoff dates so that damages may be calculated;  and

(3)     Whether Monumental breached its insurance contract with Plaintiff and each class member who prepaid the insured loan and to whom it did not refund the unearned premium;

(4)     [Connecticut subclass only]:

(a)     Whether Monumental is unjustly enriched in the amounts of the unearned premiums it failed to refund to the persons entitled thereto upon early loan payoffs; and, if so

i. Whether Monumental cannot in good conscience keep these unearned premiums but must instead return them to the rightful owners;

(b) Whether Monumental violated state credit insurance laws and regulations designed to protect consumers by requiring credit insurers such as Monumental to refund unearned premiums upon prepayments of insured indebtedness;

(c) Failed to maintain adequate mechanisms designed to reasonably assure it would learn of early loan payoffs and thus be in a position to comply with its statutory and contractual obligation to refund unearned premiums upon early loan payoffs;

(d) Whether a confidential and fiduciary relationship exists between Plaintiff and each class member, as the insured, and Monumental as each such person's insurer:

i. Because of the existence of the insurer/insured relationship itself; and/or

ii. Because Monumental holds funds subject to partial return if there is an early loan payoff.

(e) Whether the Plaintiff and class members are entitled to an accounting from Monumental of the unearned premiums, as well as imposition of a constructive trust upon the unearned premiums and profits thereon thus accounted for.

c. <u>Typicality</u>. Plaintiff's claims are typical of the claims of the class members she seeks to represent. All such claims arise out of Monumental's obligation to refund unearned premiums on early loan payoffs. Plaintiff and the other class members who have not received their refunds have suffered a common injury arising out of Defendant's common course of conduct. Plaintiff specifically alleges that the provisions of Monumental's credit insurance

contracts and its practices with respect to the administration of refunds are the same or substantially the same for her and each other class member.

        d.   <u>Adequate representation</u>.  Plaintiff will fairly and adequately protect the interests of the members of the class, and she has no interest antagonistic to or in conflict with those of the other class members.  She has retained class counsel competent to prosecute class actions, including consumer class actions, and she intends to prosecute this action vigorously for the benefit of the class.

        e.   <u>Superiority</u>.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy, in that:

        i.  The interest of the members of the class and each of them individually in controlling the prosecution and defense of separate actions is minimal.  Individual actions are uneconomical because each claim will be less than $1,000 and it is unlikely that more than a handful of class members could find competent and knowledgeable lawyers willing to provide representation without receiving a prohibitively large retainer to pursue such as small sum on an individual basis;

        ii.  Few if any individual class members (other than Plaintiff) have been made aware by counsel that they have not received the unearned premium owed to them, or of their legal and equitable rights of redress for Monumental's failure to refund their unearned premiums to them when they paid their loans off early;

        iii.  Concentration of the litigation concerning this matter in this Court is desirable as the class is composed of persons who bought Monumental's credit insurance coverage from motor vehicle dealers throughout Connecticut and throughout the country; all the coverage was

evidenced by contracts containing the same or substantially identical relevant provisions and there are no variations in state law as to their breach of contract claim.

     iv.   The class is of moderate size and the difficulties likely to be encountered in the management of a class action are not great:

     (1)   The discovery will be comprised primarily of file review;

     (2)   The few legal issues presented are not complex;

     (3)   A failure of justice will result from the absence of a class action, in that the class members will not receive the unearned premiums that belong to them and that they are entitled to receive under Monumental's own standard form contract; moreover, Monumental will remain unjustly enriched in the amounts of the unearned premiums it wrongfully withheld from the Plaintiff and class members and the profits it has obtained therefrom.

     (4)   Notice can easily be given to class members based upon Monumental's records.  Notice can also be published in appropriate newspapers.  No superior alternative exists for the fair and efficient adjudication of this dispute.

     v.   Monumental has acted on grounds that are generally applicable to the entire class, thereby making final declaratory or injunctive relief appropriate to the class as a whole. Accordingly, this case qualifies for certification for classwide injunctive relief.

<u>Predominance</u>

41.   Questions of law and fact predominate over any questions affecting only individual class members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The overarching issue of whether Monumental must provide a refund when an insured loan is paid off before the insurance coverage's scheduled expiration

date is the same for every potential class member.  The precise date of payoff for any particular

class member is determinable using objective criteria and can be resolved through the use of a

computer or clerk without the need for an individual hearing.  Indeed, the only individual

question remaining after a ministerial file review identifies the members of the class and resolves

the common factual questions concern the computations of relief to be afforded to each class

member.  This question can likewise be resolved by a ministerial examination of the class

member's credit records and/or the various creditor's payoff records, each available through

routine discovery.

## DAMAGES

42.    Plaintiff and class members who are owed refunds have suffered actual damages in the

amounts of the unearned premiums owed to them as of the times they paid off their loans early,

together with statutory interest running from their loan payoff dates until the dates upon which

they receive the unearned premiums that have been wrongfully retained.  Damages are readily

calculable using factors developed and maintained in the course of Monumental's business (as to

the amounts of the unearned premiums themselves) and by reference to applicable state law (as

to the applicable statutory interest).  Any such amounts are purely incidental and will flow

automatically once the Court has declared the rights of the class.

## COUNT I – BREACH OF CONTRACT

43.    Plaintiff realleges ¶¶1-39 and incorporates them herein by reference.

44.    Plaintiff and each class member, on the one hand, and Monumental, on the other hand,

entered into a contract for single premium credit insurance coverage in connection with a motor

vehicle sales transaction.

45.     Plaintiff's and class member's Monumental contracts provided that if the loan was prepaid then the insurance automatically terminated and the unearned premium would be promptly refunded.

46.     Plaintiff and each class member in good faith allowed the prepaid premiums to be deducted from his or her loan proceeds up front and otherwise performed and discharged his or her obligations under the Monumental contracts.

47.     Plaintiff and each class member fully prepaid his or her loan prior to the loan's scheduled maturity date of the prepaid credit insurance coverage term (other than as a result of death or other disqualifying event) and thereby became entitled to a refund of his or her unearned premium.

48.     Monumental breached its contract with each Plaintiff and each class member who is owed refunds by failing to refund the unearned premium upon prepayment of the insured indebtedness.

49.     As a result of Monumental's conduct described in the previous paragraph, Plaintiff and class members have suffered damages as set forth in ¶38, *supra*.

## COUNT II

### BREACH OF THE IMPLIED
### COVENANT OF GOOD FAITH AND FAIR DEALING

50.     Plaintiff realleges ¶¶1-39 and incorporates them herein by reference.

51.     Because its insureds are required to pay for the entire multi-year coverage term in advance, Monumental's single premium insurance contract provides that if the insured pays off the loan before the prepaid coverage has expired, then the insurance automatically terminates and the unearned premium is refunded.

14

52.     These unearned premiums purport to insure indebtedness which is, in fact, *nonexistent*. Upon prepayment of the insured indebtedness, there is nothing left to cover, and, for this reason, Monumental's coverage *automatically terminates* upon the full prepayment.  In other words, when a credit-insured loan is paid off early Monumental has *no claims exposure whatsoever* thereafter.  As of the payoff, then, Monumental can no longer "earn" any remaining unearned premiums it is holding onto and hence it cannot, in good conscience, retain possession of these monies but must return these monies to their rightful owners (the Plaintiff and class members).

53.     A covenant of good faith and fair dealing is implicit in the contracts between each Plaintiff and each class member, on the one hand, and Monumental, on the other hand.

54.     Thus, Plaintiff and class members were entitled to expect that Monumental would exercise good faith in carrying out its obligations under its contracts with them and, in this context, this means that Plaintiff and class members could reasonably expect Monumental would refund the unearned portion of the premiums that Plaintiff and the class members had allowed Monumental to collect from them in advance if and when they paid off their credit-insured loans early.

55.     Monumental breached the covenant of good faith and fair dealing during the course of the contracts by failing to refund or otherwise account for the unearned premiums owed to Plaintiff and class members who are owed refunds as a result of early loan payoffs and instead keeping these monies for itself without, in most instances, the knowledge and consent of its former insureds (none of whom, had they known of it, would have consented to this forfeiture of hard-earned money), thereby thwarting the reasonable expectations of Plaintiff and class members.

56.     Monumental's conduct in failing to refund unearned premiums that its insureds entrusted to it, and its conduct in still retaining for itself the unearned premiums belonging to the Plaintiff and class members, breaches the violates fundamental principles of justice, equity, and good conscience and constitutes a continuing breach of the covenant of good faith and fair dealing

57.     As a result of Defendant's conduct described in the foregoing paragraphs, Plaintiff and class members who are owed refunds have suffered damages as set forth in ¶39, *supra*.

### COUNT III – RESTITUTION (SUBCLASS ONLY)

58.     Plaintiff realleges ¶¶1-39 and incorporate them herein by reference.

59.     To ensure that consumers are not unknowingly deprived of their unearned premiums by the sharp business practices historically engaged in by credit insurers, state law and regulations require that credit insurance companies refund all unearned premiums to their former insureds when prepaid coverage automatically terminates due to prepayment of the insured indebtedness.

60.     Specifically, state law provides that when a consumer is charged for "single premium" credit life or disability coverage and then he or she pays off the insured loan before the coverage term has expired, the coverage terminates and the unearned premium must be promptly refunded:

> Conn. Gen. Stat. §38-a:649. Term of insurance.  . . . In all cases of termination prior to scheduled maturity, a refund shall be paid or credited as provided in section 38a-652.

61.     Credit insurers are required to incorporate this statutory obligation into their contracts:

> Conn. Gen. Stat. §38-a:652. Filing of rates.
>
> . . . .
>
> (b) Each individual policy, group certificate or notice of proposed insurance shall provide that, in the event of termination of the insurance prior to the scheduled maturity date of the indebtedness, any refund of an amount paid by the debtor on

> insurance shall be paid or credited promptly to the person entitled thereto; . . .

62.    Finally, credit insurers must keep "unmistakable evidence" that their former insureds received the unearned premiums:

> Regs., Conn. State Agencies § 38a-288-7. Cancellation; repayment of unearned premiums.
>
> . . . .
>
>   (b)  . . . In case of cancellation upon prepayment the insurance company shall have unmistakable evidence in its files that the purchaser or borrower has received proper cash return or credit.  . . .

63.    Monumental has sold single premium credit insurance and thereby collected millions of dollars in advance for years and years of future coverage, but has ignored its lawful obligation to refund unearned premiums on early loan payoffs.  It has ignored its lawful obligation by failing to maintain controls designed to reasonably assure that it will learn of early loan payoffs and by instead hiding behind the convenient (for it) but legally implausible pretext that it does not have to refund unearned premiums unless and until someone else notifies it of the early loan payoff.

64.    Monumental knows or should know that is has wrongfully retained millions of dollars in unearned premiums for nonexistent coverage yet it continues to sell the coverage whilst failing to implement and maintain adequate controls to assure it can make unearned premium refunds when required to do so.  The wrongfully-retained unearned premiums ostensibly insure <u>non-existent indebtedness</u>.  Monumental has <u>no claims exposure whatsoever</u> attributable to these unearned premiums because the insured indebtedness <u>no longer exists</u> and the coverage was deemed terminated upon the prepayment of the insured indebtedness.

65.    Monumental's continued retention of the unearned premiums belonging to the Plaintiff and class members violates fundamental principles of justice, equity and good conscience.

66.    As a result of Monumental's conduct described in the foregoing paragraphs, the Plaintiff and the class members have suffered damages as set forth in ¶39, <u>supra</u>.

**COUNT IV**

**EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF**

67.    Plaintiff realleges ¶¶1-39 and incorporates them herein by reference.

68.    Plaintiff seeks a declaration that if a credit-insured loan is paid off prior to the scheduled expiration date of the single premium credit insurance coverage, then Monumental is obligated to promptly refund the unearned premium to the insured.

69.    Plaintiff seeks an injunction requiring Monumental to implement and maintain controls designed to reasonably assure the prompt refund of unearned premiums on early loan payoffs as required by Monumental's contracts.

70.    As to the Connecticut subclass:

a.    A confidential and fiduciary relationship exists as a matter of law between each Plaintiff and each of the class members, as the insured, and Monumental as each such person's insurer:

      i.    Because of the existence of the insurer/insured relationship itself;

      ii.    Because they have reposed confidence in Monumental in that they have allowed Monumental to hold their funds subject to partial return if there is an early loan payoff.

b.    Plaintiff and class members tendered premiums in advance to Monumental through its motor vehicle agents, for multiple years of credit life insurance coverage and/or credit disability insurance coverage.

c.     When Plaintiff and class members paid off their loans <u>before</u> the prepaid insurance coverage terms expired Monumental was supposed to, but did not, refund their unearned premiums.

d.     Monumental knows or should know that it has retained unearned premiums belonging to thousands of class members.

e.     Upon information and belief, Monumental has invested the unearned premiums that belong to the Plaintiff and class members and has made substantial profits on the investments.

f.     Monumental betrayed the confidence they had reposed in it by wrongfully retaining their unearned premiums for itself without their knowledge or consent and then by offering up a phony pretext as a pretext for its ignoble and unlawful conduct in doing so.[3]

g.     Plaintiff and the class members are entitled to an accounting of their unearned premiums and all the income Monumental has obtained from investing same, as to all collections and refunds of premiums attributable to single premium credit life insurance and single premium credit disability insurance sold through motor vehicle dealerships located within Connecticut, for the period of 1995 to the present.

h.     A constructive trust should be imposed on all the unearned premiums and the investment income and profits obtained therefrom that Monumental accounts for, as the unearned premiums and the investment income and profits obtained therefrom rightfully belong to the Plaintiff and the class members and Monumental would be unjustly enriched if allowed to retain these amounts.

---

[3] The conclusion that the class members remain unaware Monumental has their money is logically inescapable, as reasonable persons who know another has wrongfully kept their money will demand it back.

i.    Plaintiff seeks an injunction requiring Monumental to implement and maintain controls designed to reasonably assure the prompt refund of unearned premiums on early loan payoffs as required by Monumental's contracts as well as by state credit insurance laws and regulations.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, for herself and the other class members, respectfully requests the Court grant the following relief:

a.    An order declaring this action be certified as a class action and certifying Plaintiff as representative of the class and her attorneys as class counsel.

b.    Actual damages in an amount in excess of $15,000 (Counts I-II);

c.    An order directing North Central to refund all unearned premiums that belong to the Plaintiff and class members (Count III);

d.    An order declaring that under its single premium credit insurance contract with the Plaintiff and class members, if a credit-insured loan is paid off prior to the scheduled expiration date of the coverage then Monumental is obligated to refund all unearned premiums to the insured (Count IV);

e.    An order requiring Monumental to implement and maintain controls designed to reasonably assure the prompt refund of unearned premiums on early loan payoffs as required by its contracts (Count IV); and

f.    Such other relief as may apply at law or at equity.

g.    An order granting such other and further relief as the Court deems appropriate.

20

Respectfully submitted,


_____/s/Daniel S. Blinn_____
Daniel S. Blinn  Fed Bar No. ct02188
dblinn@consumerlawgroup.com
Consumer Law Group, LLC
35 Cold Spring Road
Suite 512
Rocky Hill, CT 06067
(860) 571-0408
(860) 571-7457 (fax)

Dated:  December  _13_, 2005