# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

---

**SUSAN HANSEN, on behalf of herself and all others similarly situated,**
  *Plaintiff,*

   *v.*

**MONUMENTAL LIFE INS. CO.**
  *Defendant.*

---

**No. 05-cv-1905 (JBA)**

## RULING ON PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

  Plaintiff Susan Hansen brings this suit on behalf of herself and others similarly situated who purchased credit insurance from defendant Monumental Life Insurance Company from whom they never received unearned premium refunds.  Ms. Hansen now moves for certification of a class consisting of such consumers from fourteen states in addition to a subclass of Connecticut consumers.  For the reasons set forth below, her motion will be granted in part and a class will be certified of consumers in Connecticut, the District of Columbia, Maine, Maryland, Michigan, Montana, Ohio, Vermont and Virginia, who were entitled to but did not receive refunds of unearned premiums from the defendant after early termination of their vehicle loans, with the exception of those Maine and Maryland consumers who were issued defendant's Forms 89-0495 ML, 89-0498, ML, MC 1536, or ML-C 18005.

## I.      Factual and procedural background

Monumental is a Maryland corporation which sells credit insurance to guarantee the repayment of motor vehicle loans in the event that the borrower is unable to do so due to death or disability.  A consumer who is financing the purchase of a vehicle and purchases credit life and disability insurance for the life of the loan pays a single premium for the policy financed by the loan proceeds.[1]  If a consumer pays off her loan ahead of schedule, a portion of the single premium the defendant received becomes unearned.

Ms. Hansen, a citizen of Connecticut, is a consumer who purchased a used pickup truck in August 2002 from a dealership in Middletown, Connecticut, and financed a portion of the purchase with a loan from Toyota Financial Services to be paid over the course of three years.  As a condition of the loan, Ms. Hansen was required to purchase[2] life and disability credit insurance coverage from Monumental with a single premium of $441 which was financed from the loan proceeds.  The insurance certificate which Monumental issued to her contained the following representation: "[i]f the loan is discharged before the scheduled date of maturity ... the unearned portion of any premium paid shall be promptly refunded or credited to the person entitled thereto." Pl.'s Ex. 3.

In March 2004, Ms. Hansen paid off the loan seventeen months early and

---

[1] Monumental sells the insurance products at issue here through independent agents, including vehicle dealerships.  *See* Ans. at ¶ 2; Wesley Barrow Dep. [Pl.'s Ex. 1 (Doc. # 77-2)] at 56:15-25.

[2] Although the documents which Ms. Hansen received while applying for the vehicle loan stated that credit insurance was "optional," Hansen Dep. [Def.'s Ex. 4 (Doc. # 79-5)] at 16:9-13, Ms. Hansen purchased the insurance "[b]ecause the salesman said that I had to in order to make the deal go through," *id.* at 14:20-21.

received a notice from Toyota Financial Services advising her that "if you have paid off your account before its original maturity date and you have financed credit life/disability insurance, you may be entitled to a refund of the unearned premiums," Hansen Dep. [Def.'s Opp. to Class Cert. Ex. 4] at 33:4-8.  The letter advised Ms. Hansen to "contact your dealer or insurance company directly to obtain any refund that may be due," *id.* Ms. Hansen did not contact either the dealer or Monumental to request a refund.  She filed this suit on behalf of herself and all others who paid up front for credit insurance coverage from Monumental but did not receive a refund of any portion of the premium paid following early termination of their loans.

Ms. Hansen's complaint asserts two common law counts for breach of contract and breach of the implied covenant of good faith and fair dealing.[3]  In Count 1, Ms. Hansen alleges that Monumental breached an express term of its contract with her by failing to refund the unused credit insurance premium promptly after early repayment of the loan it insured.  Count 2 alleges that defendant's coverage automatically terminated upon plaintiff's full prepayment of the loan and that Monumental breached the covenant of good faith and fair dealing by failing to refund or otherwise account for the unearned

---

[3] Ms. Hansen has also pled violation of two Connecticut statutes pertinent to her proposed Connecticut subclass, *see infra*: in Count 3, Ms. Hansen seeks restitution for Monumental's violation of Conn. Gen. Stat. §§ 38a-649 and 38a-652, and Conn. Agencies Regs. § 38a-288-7, by its failure to meet the obligation to refund unearned insurance premiums, failure to maintain controls reasonably designed to assure its knowledge of early loan payoffs and wrongful detention of unearned premiums paid for non-existent coverage of early terminated loans.  *See* Conn. Gen. Stat. § 38a-649 ("In all cases of termination prior to scheduled maturity, a refund shall be paid or credited"), § 38a-652(b) ("[e]ach individual policy, group certificate or notice of proposed insurance shall provide that, in the event of termination of the insurance prior to the scheduled maturity date of the indebtedness, any refund of an amount paid by the debtor on insurance shall be paid or credited promptly to the person entitled thereto"); Conn. Agencies Regs. § 38a-288-7(b) ("In case of cancellation upon prepayment the insurance company shall have unmistakable evidence in its files that the purchaser or borrower has received proper cash return or credit").

premium resulting from early loan payoff, *see* Compl. at ¶¶ 50-57.

## II.    The plaintiff's proposed class

Ms. Hansen proposes pursuant to Fed. R. Civ. P. 23(b)(3) that this Court certify a class of consumers who were "charged for Monumental single premium credit insurance by a motor vehicle dealership located in" Colorado, Connecticut, the District of Columbia, Delaware, Kansas, Maine, Maryland, Michigan, Montana, New Jersey, Ohio, Texas, Virginia, and Vermont, and who "paid off their credit-insured loans prior to the insurance coverage expiration date and who did not receive a refund of their unearned premium," Pl.'s Mot. for Class Cert. [Doc. 77] at 1.  In the alternative, Ms. Hansen seeks certification of a class of such people located in Connecticut alone.[4]

### A.    The plaintiff's Rule 23 burden

A plaintiff moving for Rule 23 class certification must prove that the putative class action meets four prerequisites in addition to the threshold inquiry of ascertainability: numerosity, commonality, typicality, and adequacy of representation.  A class action also must qualify under at least one of the categories enumerated in Rule 23(b), *In re Visa Check/Mastermoney Antitrust Litigation*, 280 F.3d 124, 132 (2d Cir. 2001).  "The party

---

[4] Ms. Hansen's proposed Connecticut subclass would be defined as identical to her multi-state class, except that class members would be restricted to those who purchased their credit insurance from vehicle dealerships in Connecticut, *see* Compl. at 6.  Ms. Hansen has not explained in the pleadings how this subclass would function as an alternative to her multi-state class, and it would appear to be designed as a backstop in the event of the Court's refusal to certify the multi-state class.  Because the Court is certifying a multi-state class which includes such Connecticut consumers, it is therefore unnecessary at this stage of the litigation to certify the Connecticut subclass.

seeking to certify a class bears the burden" of demonstrating that the Rule 23(a) and (b) requirements have been met, *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir. 1999).

While the class certification inquiry should not "extend into a protracted mini-trial of substantial portions of the underlying litigation," the Court must receive "enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." *In re Initial Public Offering Securities Litigation* ("IPO"), 471 F.3d 24, 41 (2d Cir. 2006) (emphasis added).[5]

### 1.     Ascertainability

A threshold inquiry for class certification is the implicit requirement of a proposed class's ascertainability, for a class cannot be certified where its definition is so indefinite as to prevent a court from eventually determining whether each putative class action participant is a proper member. *Mike v. Safeco*, 223 F.R.D. 50, 52-53 (D. Conn. 2004) (citing 7A Charles Wright, et al., Federal Practice and Procedure § 1760, at 120-21 (2d ed. 1986)). *See also Sheehan v. Purolator, Inc.*, 839 F.2d 99, 102-103 (2d Cir. 1988) (affirming denial of certification in an employment gender bias suit on grounds of unascertainability where plaintiff's statistical evidence failed to take into account "various relevant non-discriminatory factors such as education and work experience," thus yielding a potential class of thousands of female employees whose claims of discrimination would have had to be individually examined). "An identifiable class exists

---

[5] The "some showing" evidentiary threshold set forth in *Caridad* is no longer sufficient post-*IPO*.

if its members can be ascertained by reference to objective criteria," *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002) (internal quotations and citations omitted) (explaining that "[h]ere, plaintiffs' class definition refers only to objective criteria: Either a well has MTBE or it does not; either an individual has an ownership interest in a well or she does not; either her property is located in a class state or it is not").  The objective criteria standard is used because at bottom, the ascertainability inquiry is concerned with whether it is "'administratively feasible for a court to determine whether a particular individual is a member' of the class," *In re Fosamax Prods. Liab. Litig.*, No. 06-md-1789, 2008 U.S. Dist. LEXIS 199 (S.D.N.Y. Jan. 3, 2008) (quoting *Rios v. Marshall*, 100 F.R.D. 395, 403 (S.D.N.Y. 2002)).  Here, Monumental argues that membership in the proposed class is unascertainable for two reasons: first, because Monumental knows of no individual whose loan has terminated early and who has not received a refund, and second, because applicable federal and state privacy laws prevent the plaintiff from requesting loan termination dates from lenders.

As to defendant's first argument, just because Monumental has no notice of an individual's early loan termination does not mean the class is unascertainable, and to accept Monumental's contention that no one who has failed to notify the defendant of his or her early loan termination can be a class member is to prematurely accept the merits of defendant's condition-precedent defense to the action, *i.e.*, that it owes no duty to refund its unearned premiums unless the consumer whose loan has terminated early requests the refund.

The defendant's second ascertainability argument posits that the plaintiff's failure at this certification stage to submit to the Court a detailed plan for determining the loan

termination dates of all potential class members falls short of *IPO*'s "enough evidence" threshold, because she cannot show ascertainability.  However, *IPO* held that a court must receive "enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met," 471 F.3d at 41, but not that the plaintiff must submit to the Court a minutely-detailed plan for obtaining the documents which ascertain class membership.  The defendant cites no authority for the proposition that more leg-work is required here as a matter of law.  Ms. Hansen has proposed an objectively-identifiable class, *i.e.*, consumers in the relevant states whose vehicle loans terminated early and who were entitled to, but did not receive, refund of a portion of their credit insurance premium.  Ms. Hansen has identified the starting point at which she may gather information which will permit the Court to administratively determine whether each proposed member may become part of the class – Monumental's records of certificates issued in the relevant jurisdictions to consumers whom Monumental has not recorded as having terminated their coverage early – and has proposed to then obtain through discovery loan termination dates from the lenders[6] on whose loans those consumers obtained Monumental coverage.  The plaintiff proposes that her order of operations would winnow the universe of possible plaintiffs to a more defined configuration such that the Court could concretely determine class membership based upon objective criteria, and that she has thus satisfied her ascertainability burden.

Monumental objects to this proposed procedure of obtaining loan termination dates from lenders, claiming that applicable federal and state privacy laws prevent it from

---

[6] At oral argument, plaintiff's counsel represented that the bulk of vehicle loans are held by a small number of lenders.

asking lenders for the "potential class members" loan termination dates.  As authority for this proposition, Monumental cites a provision of the Graham-Leach-Bliley Act, 15 U.S.C. § 6801 *et seq.*, stating that "[i]t is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information," § 6801(a).[7]  However, this statutory provision also carves out an exception permitting disclosure of information "to comply with a properly authorized civil, criminal, or regulatory investigation or subpoena," 15 U.S.C. §6802(e)(8). Anticipating the need for subpoenas as a means of obtaining loan termination dates, the defendant predicts an administrative debacle because holders of the subpoenaed loan documents would contest the subpoenas.  Defendant's speculation over lenders' responses to subpoenas is premature.  If and when motions to quash are filed on privacy grounds as it anticipates, there will likely be commonality to the grounds asserted, resulting in acceptable manageability.  On balance, the Court is satisfied at this stage that ascertainability has been adequately demonstrated.

### 2. Numerosity

The Rule 23(a) numerosity requirement "does not mandate that joinder of

---

[7] Under the Act, financial institutions are barred from disclosing "nonpublic personal information to a nonaffiliated third party" unless institutions notify consumers that such information is to be disclosed, give consumers an opportunity to opt out, and explain to consumers how to exercise their opt-out right, 15 U.S.C. § 6802(b)(1).  The Act also creates an exception which permits financial institutions to "provid[e] nonpublic personal information to a nonaffiliated third party to perform services for or functions on behalf of the financial institution" so long as that disclosure is made known to the consumer.  15 U.S.C. § 6802(b)(2).

all parties be impossible – only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate," *Cent. States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-245 (2d Cir. 2007).  The plaintiff's expert, Marcie Belles, estimates that "on average, at least 65% of automobile loans are paid off early," Pl.'s Mot. for Class Cert. Ex. 22 (Doc. # 77-23) at 3.  Using that figure, 16,001 of the 24,617 Connecticut loans which Monumental insured since 1999 will have been terminated early, even though Monumental's records only show 4,265 as having terminated early, suggesting that perhaps as many as 11,736 loans were terminated early without refund.  The plaintiff has identified 1,825 credit insurance certificates issued in Connecticut since January 1, 1999 which are not accounted for as either in force, full term, or cancelled early, *see* Pl.'s Mot. for Class Cert. Ex. 21.  By any telling, Ms. Hansen has satisfied the numerosity requirement for both the Connecticut and multi-state putative classes because if there is difficulty inherent in joining forty class members, the greater numbers here, whatever they may be, have a presumption of impracticable joinder, *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

### 3.     Commonality and typicality

As to the commonality and typicality requirements, the Second Circuit notes that these two elements "tend to merge into one another," but the "crux of both requirements" is the efficient maintenance of the action and the consideration of whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence," *Marisol A. by*

*Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotations and citations omitted).

Ms. Hansen prepaid her Monumental premium for thirty-six months of coverage. She paid her loan off seventeen months early. Monumental stands on the fact that Hansen did nothing to inquire about a refund to argue that the uniqueness of Ms. Hansen's situation precludes her from functioning as a representative of the putative class, because her superior knowledge of when performance of the refund was due provided by her lender's letter that she "may be" due a refund imposed an obligation on her part to seek out the refund, and she is thus subject to a defense which other class members may not be. Monumental also argues that Ms. Hansen is differently situated than class members who may not have received any notice whatsoever, and therefore she cannot be typical of the members of the class.

Ms. Hansen's receipt of notice does not distinguish her from other class members, as their shared assertion is that performance was due immediately upon early retirement of the underlying debt, and the breach of contract was defendant's failure to promptly refund any unearned premium whether or not notice was received by the consumer.

Monumental's argument that Ms. Hansen's unique "superior knowledge" derived from the dealer letter distinguishes her from the putative class is unavailing, because the relevant "superior knowledge" is that derived from each consumer knowing when he or she paid off the loan, where Monumental did not. Monumental's briefing makes clear that it intends to assert a broad superior knowledge defense based on the fact that consumers knew when they paid off their loans and were therefore in possession of knowledge of when refund performance on Monumental's part was due, *see* Def.'s Opp.

to Class Cert. at 16-18; Ans. at 13.  From this view point, Ms. Hansen is typical of the other class members, all of whom possessed knowledge of their early loan payoff.  The legal effect of Ms. Hansen's knowledge is common to the class and even though it could ultimately defeat her claim, it does not defeat her suitability as a class representative.

### 4.    Adequacy of representation

Finally, the Court is required to look to the adequacy of representation which the class representative will provide.  To satisfy this, Ms. Hansen needs to demonstrate two things.  First, there can be no material conflict of interest between her and other class members.  *See In re Visa Check*, 280 F.3d at 145 ("not every potential disagreement between a representative and the class members will stand in the way of a class suit . . . [t]he conflict that will prevent a plaintiff from meeting the Rule 23(a)(4) prerequisite must be fundamental") (internal quotations and citations omitted).  Second, Ms. Hansen must show that class counsel is "qualified, experienced and generally able to conduct the litigation," *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992) (internal quotation omitted).

Neither qualification is directly contested by Monumental, although it insinuates in a footnote that Ms. Hansen's choice of arguments in her class certification briefing "raises serious concerns as to the adequacy of representation," Def.'s Opp. to Class Cert. at 15 n.4.  Ms. Hansen's choice of argument notwithstanding, nothing in the record suggests that Ms. Hansen's interests are in tension – much less in a "fundamental" manner, *In re Visa Check*, 280 F.3d at 145  –  with those of the putative class: she has not pressed any claims which are separate from the class members', her relevant experiences

appear to be those of an ordinary debtor who retired her automobile loan early, and the legal import of defendant's condition precedent defenses requires a merits determination which is inappropriate at this class certification stage.  She has therefore shown herself to be an adequate class representative.

As to the adequacy of plaintiff's counsel, Monumental does not dispute that counsel possesses the requisite skill to conduct the litigation, and the record of orders issued in other class actions litigated by plaintiff's counsel show at a minimum counsel's extensive familiarity with litigation of this sort, *see* Pl.'s Mot. for Class Cert. Ex. 17 (Doc. # 77-18) (*Pierce v. Universal Underwriters Life Ins. Co.*, No. SU 2003 CV 377, Slip Op. at 44 (Ga. Sup. Ct. Mar. 5, 2007) (certifying a class of credit insurance plaintiffs and appointing Attorney Butler as class counsel)), Ex. 19 (Doc. # 77-20) (*Gibson v. Universal Underwriters Life Ins. Co.*, No. 04-C-414, Slip. Op. at 10 (N.H. Sup. Ct. Apr. 22, 2005) (same; appointing Attorney O'Brien class counsel)).  As with all elements of class certification, if the competence of class counsel comes into question for any reason, the Court is under a continuing obligation to monitor the progress of the litigation and "reassess [its] class rulings as the case develops," *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999) (internal quotation omitted), de-certifying if necessary should any of the required elements drop out of the case.

**B.      Rule 23(b)(3) class requirements**

In addition to meeting the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, a putative class representative seeking certification under Fed. R. Civ. P. 23(b)(3) must make two additional showings, namely,

that "questions of law or fact common to the members of the class predominate over any questions affecting individual members," and that the class action form is "superior to other available methods for the fair and efficient adjudication of the controversy."

### 1. Predominance

Rule 23(b)(3)'s predominance prong "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," *Amchem Prods.*, 521 U.S. 591, 623 (1997). To meet this test, "a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof," *In re Visa Check*, 280 F.3d at 136 (internal quotation omitted). Although the predominance test resembles, on its face, Rule 23(a)'s commonality test, "the predominance criteria is far more demanding" and is not satisfied by a plaintiff's bare assertion that a common legal question ties together the putative class. *Amchem Prods.*, 521 U.S. at 624.

Propriety of Rule 23(b)(3) class certification requires determination of whether individualized questions exist which would defeat the efficiency of the class action model. Differences in relevant states' laws can outweigh the predominance of a class-wide question of law, *id.* While there is no particular threshold at which the predominance of common questions is outweighed by the number of jurisdictions' law involved, the propriety of certifying a class involving different states' laws wanes as the volume of differences among such laws increases. *See In re Am. Medical Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996) (reversing certification of a fifty-state class where the trial court "failed to consider" how the relevant law varied from state to state, and noting that "if

more than a few of the laws of the fifty states differ, the district judge would face the impossible task of instructing a jury on the relevant law, yet another reason why class certification would not be the appropriate course of action"); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996) (reversing certification of a nationwide class noting that "[i]n a multi-state class action, variations in state law may swamp any common issues and defeat predominance," because "[v]ariations in state law magnify the differences" between class members' claims); *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 627 (3d Circuit 1996) (vacating certification of a nationwide mass toxic tort settlement class in part because determination and application of the states' differing rules "compounded exponentially" the existing "proliferation of disparate factual and legal issues"); *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300 (7th Cir. 1995) (issuing writ of mandamus to de-certify a nationwide class in relevant part because "a single trial before a single jury" involving the law of many states would necessarily involve giving the jury "a kind of Esperanto instruction" which impermissibly glosses over jurisdictional differences in contravention of *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)).

Here, the plaintiff concedes that the statutes governing credit insurers' responsibilities on early loan termination in the fourteen jurisdictions where class members' certificates were issued[8] would control the contract interpretation, *see* Pl.'s Mot. for Class Cert. at 20 n.13.  Nonetheless, plaintiff foresees no impact on the

---

[8] *See* Col. Rev. Stat. Ann. § 10-10-110(2)(b); Conn. Gen. Stat. § 38a-652(b); Del. Code Ann. tit. 18, § 3708(b); D.C. Code § 31-5108(a); Kan. Stat. Ann. § 16a-4-108(1),(3); 24-A Me. Rev. Stat. § 2859(2); Md. Code Ann., Ins. § 13-112; Mich. Comp. Laws Ann. § 550.618; Mont. Code. Ann. § 33-21-206(2); N.J. Stat. § 17B:29-8(b); Ohio Rev. Code Ann. § 3918.08(B); Tex. Ins. Code § 1153.202(a); 8 Vt. Stat. Ann. § 4109(b); Va. Code Ann. § 38.2-3729(A).

certifiability of the class arising from differences among these statutes because, in her view, this litigation involves "a simple breach of a standard form contract," *id.* at 21 (internal quotation omitted), and the law of the relevant jurisdictions is uniform in its approach to contract interpretation.

Review of these statutes makes clear that this position is too broad a gloss on Ms. Hansen's theory that refunds are contractually the insurer's sole responsibility: Colorado's law makes it the responsibility of the "original creditor" to either "promptly make the appropriate refund or credit" or "promptly notify the consumer and the insurer in writing that a refund or credit is due"; if the latter, the insurer is then obligated to "make the appropriate refund or credit to the person entitled thereto within thirty days of receipt of such notice," Col. Rev. Stat. Ann. §§ 5-4-108(2)(a), 10-10-110(2)(b).  Delaware law mandates that "[e]ach individual policy or group certificate shall provide for a refund . . . upon notice to the insurer," Del. Code Ann. tit. 18, § 3708(b).  The relevant Texas statute specifies that "the person who is the holder of the underlying debt instrument on the date the debt terminates shall ... provide notice to the insurer of the termination of the debt" and any insurer facing a claim from a borrower whose premiums have not been refunded "shall be entitled to indemnity from a holder who failed to provide the notice required," Tex. Ins. Code § 1153.202(a).  Kansas's statute assigns the burden to the creditor, rather than the insurer, to "promptly make or cause to be made an appropriate refund or credit," Kan. Stat. Ann. § 16a-4-108(3).

Moreover, the plaintiff's assertion that the insurance contracts here were "standard form contracts" connotes a uniformity among them which is contravened by the exemplar contracts of record.  The plaintiff's enumeration of contractual provisions

utilized in the fourteen relevant jurisdictions shows significant differences: some Maine contracts provide that if the loan ends prematurely, "the *Creditor* will refund or credit you any unearned insurance charge" (emphasis added); some Maryland contracts specify that in the same circumstances Monumental "will refund any unearned credit to the Creditor for refund or credit to your loan"; and the New Jersey contracts provide for refunds only where the borrower discharges her loan "due to renewal or refinancing before the Termination Date." *See* Pl.'s Memo in Support of Class Cert. Ex. 4 [Doc. # 77-5] (listing the relevant language in the contracts at issue).

The plaintiff believes that these differences are immaterial, based on her view that where a contractual term is more favorable to the insured than a relevant statute, the contractual provision prevails. In the plaintiff's contemplation, because Monumental "explicitly agreed to refund unearned premiums," Pl.'s Mot. for Class Cert. at 21, n.17, that contractual term trumps any state statute on point. There are two deficiencies with this approach: First, the plaintiff does not present any analysis of the case law in the fourteen jurisdictions claimed to demonstrate that her assertion is correct. Second, Ms. Hansen's formulation of the defendant's obligation stops with defendant's contractual duty to refund unearned premiums. The dispute, however, is over *when* the defendant must perform.

Nonetheless, the existence of differences among some of the statutes and some of the contracts at issue in this litigation does not entirely swamp a predominant common legal question and render all of the putative class members' claims unsuitable for class adjudication. Nine of the proposed jurisdictions – Connecticut, the District of Columbia, Maine, Maryland, Michigan, Montana, Ohio, Vermont, and Virginia – have statutes with

nearly identical language, descended from the same model uniform statute and involve contracts which, in relevant part, closely track the language of the statute.[9]  In these nine jurisdictions, with two exceptions,[10] the two sources of authority – contract and statute – are sufficiently similar as to minimize the likelihood of significant legal dispute over whether the contract or statute controls, permitting the Court to focus on the central question of law in the case, *i.e.*, when Monumental's duty to the putative class members to refund unearned premiums is triggered.  Because the statutes at issue in these nine jurisdictions have undergone little or no alteration since adoption and have no precedential published interpretive case law, their similarity presents a manageable question of statutory construction for this Court: the relevant language appears clear, and the adoption of the same model statute evidences intended uniform application.

Moreover, narrowing the class definition around a predominant question of law permits the Court to readily handle Monumental's condition-precedent defense that its refund obligation is only triggered by demand or notice, based on the Restatement (First)

---

[9] For example, compare Conn. Gen. Stat. § 38a-652(b) ("[e]ach individual policy, group certificate or notice of proposed insurance shall provide that, in the event of termination of the insurance prior to the scheduled maturity date of the indebtedness, any refund of an amount paid by the debtor on insurance shall be paid or credited promptly to the person entitled thereto") with Monumental's forms issued to Connecticut borrowers ("[i]f the loan is discharged before the scheduled date of maturity . . . the unearned portion of any premium paid to the Company shall be promptly refunded or credited to the person entitled thereto").  For a complete side-by-side comparison of the statutes and contracts in the nine jurisdictions, see the Appendix to this ruling.

[10] The defendant's forms 89-0495 ML and 89-0498 ML (used in Maine), and MC 1536 and ML-C 1805 (used in Maryland) place the ultimate burden on the creditor, rather than the insurer.  This language potentially conflicts with 24-A Me. Rev. Stat. § 2859(2) and Md. Code Ann., Ins. § 13-112, respectively, and plaintiffs who were issued those forms will therefore be excluded from the class.

of Contracts.[11]  While the plaintiff is confident that "no implied condition precedent may

be read into" any of the putative class members' insurance certificates, Pl.'s Supp. Reply

[Doc. # 83] at 2, it will be the Court's task to determine at a later stage whether

Monumental's certificate forms avoid the obligation of refunding premiums which are

unearned but unrequested.  This legal issue is focused and is common to these nine

jurisdictions which have implemented the model statute and in which Monumental's

form certificates track the statute.

Monumental's objection that the differing questions of law which might be raised

by its defense of statutes of limitations and the plaintiffs' potential parry of fraudulent

concealment will create an unmanageable sprawl of legal issues which defy coherent jury

instruction does not, at this early stage of the litigation, preclude certification of the nine

state class, *see In re Visa Check*, 280 F.3d at 138 (noting that "the fact that a defense may

arise and may affect different class members differently does not compel a finding that

individual issues predominate over common ones" so long as "common issues will

predominate over the individual questions raised by that defense") (internal quotations

and citations omitted).  At this juncture, the scope of the project of construing nine

jurisdictions' contract statutes of limitations, and any exceptions thereto, will be deferred

to a point if and when those concerns become concrete and require consideration of

de-certification or creation of sub-classes, *Boucher*, 164 F.3d at 118.

---

[11] *See* Restatement (First) of Contracts § 262 (1932) ("[w]here a promise cannot be performed in accordance with its proper interpretation without some precedent or concurrent act or forbearance by the promisee, that act or forbearance is a condition").

###### 2.      Superiority of the class action form

As to the superiority of the class action form to "other available methods for the fair and efficient adjudication of the controversy," four criteria guide the determination:

A)      the class members' interests in individually controlling the prosecution or defense of separate actions;

B)      the extent and nature of any litigation concerning the controversy already begun by or against class members;

C)      the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

D)      the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  The final two criteria – desirability of concentrating the litigation of claims in this forum and likely difficulties in class management – counsel a similar result using this pared-down multi-state class.  By limiting the class to the nine model statute jurisdictions amenable to one uniform interpretation, a manageable proceeding in which the similar claims of consumers residing in eight states and the District of Columbia can be dealt with simultaneously and efficiently.

Because a class thus limited has a common question of law which predominates, Ms. Hansen's motion will be granted under Fed. R. Civ. P. 23(b)(3) for class members in Connecticut, the District of Columbia, Maine, Maryland, Michigan, Montana, Ohio, Vermont, and Virginia, excepting Maine and Maryland consumers who were issued Monumental's forms 89-0495 ML, 89-0498 ML, MC 1536, or ML-C 1805.

**IV.     Conclusion**

For the foregoing reasons, the plaintiff's motion for class certification [Doc. # 76] is GRANTED as to consumers who were entitled to, but did not receive, a refund of unearned premiums from the defendant after early termination of their vehicle loans and who live in Connecticut, the District of Columbia, Maine, Maryland, Michigan, Montana, Ohio, Vermont, and Virginia, excluding Maine and Maryland consumers who were issued the defendant's forms 89-0495 ML, 89-0498 ML, MC 1536, or ML-C 1805. Plaintiff's Motion for Class Certification is DENIED as to putative class members from Colorado, Delaware, Kansas, New Jersey, and Texas.

IT IS SO ORDERED.

/s/

_____

JANET BOND ARTERTON, U.S.D.J.

Dated at New Haven, Connecticut, this 6th day of March, 2008.

**Appendix**

| Jurisd. | Statutory language | Contractual language |
|---------|-------------------|---------------------|
| **Conn.** | Each individual policy, group certificate or notice of proposed insurance shall provide that, in the event of termination of the insurance prior to the scheduled maturity date of the indebtedness, any refund of an amount paid by the debtor on insurance shall be paid or credited promptly to the person entitled thereto.<br><br>Conn. Gen. Stat. § 38a-652(b). | If the loan is discharged before the scheduled date of maturity . . . the unearned portion of any premium paid to the Company shall be promptly refunded or credited to the person entitled thereto.<br><br>Pl.'s Ex. 4 (Doc. # 77-5) at 1. |
| **D.C.** | Each individual policy or certificate of credit life insurance or credit accident and health insurance shall provide that in the event of termination of the insurance prior to the scheduled maturity date of the indebtedness, any refund of an amount paid by the debtor for insurance shall be paid or credited promptly to the person entitled thereto.<br><br>D.C. Code § 31-5108(a). | If this insurance stops before the Expiration Date ... we will refund the unearned portion of the insurance charge to you.<br><br>Pl.'s Ex. 4 (Doc. # 77-5) at 1. |

| | | |
|---|---|---|
| **Maine** | Each individual policy or group certificate shall provide that in the event of termination of the insurance prior to the scheduled maturity date of the indebtedness, any refund of an amount paid by the debtor for insurance must be paid or credited promptly to the debtor.<br><br>24-A Me. Rev. Stat. § 2859(2). | (1) If the loan is discharged before the scheduled date of maturity ... the unearned portion of any premium paid to the Company shall be promptly refunded or credited to the person entitled thereto.<br><br>(2) If the loan ends prior to your insurance's expiration date, the Creditor will refund or credit to you any unearned insurance charge.<br><br>(3) If the loan ends prior to your loan's scheduled maturity date, the Creditor will refund or credit to you any unearned insurance charge.<br><br>Pl.'s Ex. 4 (Doc. # 77-5) at 1. |
| **Md.** | [E]ach individual policy or group certificate shall provide that any refund of the amount paid by the debtor ... will be paid or credited promptly to the person entitled to it if the insurance is terminated before the scheduled maturity date of the indebtedness.<br><br>Md. Code Ann., Ins. § 13-112. | (1) If this insurance stops before the Expiration Date ... we will refund the unearned portion of the insurance charge to you.<br><br>(2) If this insurance stops before the scheduled maturity date of your debt ... we will refund the unearned portion of the insurance charge to you.<br><br>(3) If coverage stops prior to the scheduled Expiration Date ... the Company will refund any unearned premium to the Creditor for refund or credit to your loan.<br><br>(4) If this insurance stops before the scheduled maturity date of your debt, we will refund the unearned portion of the insurance charge to you.<br><br>Pl.'s Ex. 4 (Doc. # 77-5) at 1. |

| | | |
|---|---|---|
| **Mich.** | Each individual policy, group certificate or notice of proposed insurance ... shall provide that in the event of termination of the insurance prior to the scheduled maturity date of the indebtedness, any refund of premium due shall be paid or credited promptly to the person entitled thereto.<br><br>Mich. Comp. Laws Ann. § 550.618. | If the insurance stops before the scheduled maturity date of your debt, we will promptly refund or credit the unearned portion of the insurance charge to the person entitled thereto.<br><br>Pl.'s Ex. 4 (Doc. # 77-5) at 1. |
| **Mont.** | Each individual policy, group certificate of insurance, or notice of proposed insurance ... must provide that, if the insurance is terminated before the scheduled maturity date of the indebtedness, any refund of premium or amount paid by the debtor for insurance must be paid or credited promptly to the person entitled thereto.<br><br>Mont. Code. Ann. § 33-21-206(2). | If insurance stops before the end of the scheduled term of insurance ... the unearned portion of any premium paid to the Company shall be promptly refunded or credited to the person entitled to the refund.<br><br>Pl.'s Ex. 4 (Doc. # 77-5) at 1. |

| | | |
|---|---|---|
| **Ohio** | Each individual policy, group certificate, or notice of proposed insurance shall provide that in the event of termination of the insurance prior to the scheduled maturity date of the indebtedness, any refund of an amount paid by the debtor for insurance shall be paid or credited promptly to the person entitled thereto.<br><br>Ohio Rev. Code Ann. § 3918.08(B). | If this insurance stops before the scheduled maturity date of your debt ... we will refund the unearned portion of the insurance charge to you.<br><br>Pl.'s Ex. 4 (Doc. # 77-5) at 1. |
| **Vt.** | Each individual policy, group certificate or notice of proposed insurance shall provide that in the event of termination of the insurance prior to the scheduled maturity date of the indebtedness, any refund of an amount paid by the debtor for insurance shall be paid or credited promptly to the person entitled thereto.<br><br>8 Vt. Stat. Ann. § 4109(b). | If the insurance stops before the Expiration Date of your insurance, we will refund the unearned portion of the insurance charge to you.<br><br>Pl.'s Ex. 4 (Doc. # 77-5) at 2. |
| **Va.** | Each individual policy or group certificate shall provide that, in the event of termination of the insurance prior to the scheduled maturity date of the indebtedness, any refund of an amount paid by the debtor for insurance shall be paid or credited to the person entitled thereto.<br><br>Va. Code Ann. § 38.2-3729(A). | If the insurance stops as herein stated, the unearned portion of any premium paid to the Company shall be promptly refunded or credited to the person entitled thereto.<br><br>Pl.'s Ex. 4 (Doc. # 77-5) at 1. |